AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED

JUL 12 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.
One Telcel VoLTE SIM card )
ICCID 8952020217 512317207 )
)

'19MJ ›2908

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A
(INCORPORATED HEREIN)

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B
(INCORPORATED HEREIN)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 952 and 960 | Importation of a Controlled Substance |

The application is based on these facts:

SEE AFFIDAVIT OF TASK FORCE OFFICER ADRIANA ROSAS-CARRANZA

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Adriana Rosas-Carranzo, TFO
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/12/19

*Judge's signature*

City and state: San Diego, CA    Hon. William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

a.  Telcel VoLTE SIM Card
    ICCID 8952020217 512317207
    (**Target Device**)



The **Target Device** is currently in the possession of the Department of Homeland Security, Seized Property Vault, Homeland Security Investigations San Diego, 880 Front Street, San Diego, CA 92101.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the Subscriber Identity Module (SIM) Card described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the SIM Card shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the SIM Card will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 15, 2018 to November 15, 2018:

a. tending to identify attempts to transport methamphetamine or some other federally controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation of methamphetamine or some other federally controlled substance from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the transportation of methamphetamine or some other federally controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the transportation of methamphetamine or some other federally controlled substance from Mexico into the United States, such as pickup, transfer, and delivery locations, along with the refueling points throughout the smuggling venture;

e. tending to identify the user of, or persons with control over or access to, the target device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

**which are evidence of violations of 21 U.S.C. §§ 952 and 960.**

# AFFIDAVIT

I, Adriana Rosas-Carranza, an officer with the Department of Homeland Security (DHS), Customs and Border Protection (CBP), being duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic device (referred to herein as the "**Target Device**"), as further described in Attachment A, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952 and 960, as more particularly described in Attachment B:

    a.    Telcel VoLTE SIM Card
           ICCID 8952020217 512317207
           (**Target Device**)

This search supports an investigation and prosecution of Laura CASAS (CASAS) for one or more of the crimes mentioned above. A factual explanation supporting probable cause follows.

2. On April 30, 2019, I accompanied Master Technician Mike Magers of Smitty's Service to view the vehicle driven by CASAS at the time of her arrest. Magers discovered the **Target Device** under the center consoles' coffee cup holder rubber mat cover. The **Target Device** is currently stored in the Seized Property Vault, Homeland Security Investigations San Diego, 880 Front St., San Diego, CA 92101.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my

1

review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause. Dates, times, and amounts are approximations unless otherwise noted.

## EXPERIENCE AND TRAINING

5.   I am a CBP Officer and have been so employed for approximately 17 years. I have been a Task Force Officer with Homeland Security Investigations for approximately six years. I have conducted criminal investigations of or relating to narcotics smuggling and other crimes. I have received specific training in the area of narcotics investigations, and I have training and experience in the methods used by narcotics traffickers to import and distribute drugs. I am presently assigned to the Organized Drug Enforcement Task Force (OCDETF) Strike Force Group in San Diego, California, and my duties include investigating the illicit trafficking of controlled substances into the United States of America. I am cross designated by the United States Drug Enforcement Administration to conduct narcotics investigations and enforce the provisions of the Federal Controlled Substance Act, pursuant to Title 21 of the United States Code.

6.   I have received formal training, as well as on-the-job experience and training, relative to the investigation of the importation, transportation, sales, manufacturing and distribution of controlled substances. I have also participated in investigations that involved the use of electronic surveillance techniques. I have investigated illicit narcotic and controlled substances that have resulted in arrests, indictments, trials and convictions. I have interviewed individuals who have been directly and indirectly involved in the importation, transportation, distribution and manufacturing of illegal drugs and controlled substances.

7.   Based on my training and experience, I have become familiar with the methods utilized in narcotics trafficking operations and the unique trafficking patterns

employed by narcotics organizations. I have also spoken with senior agents as well as other senior law enforcement officers, about their experiences and the results of their investigations and interviews. I have learned that drug traffickers often require the use of a communication facility to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing and distributing controlled substances and for arranging the disposition of proceeds from the sales of controlled substances. I have learned that professional drug operations depend upon maintaining their extensive contacts. The communication facility enables drug dealers to maintain contact with drug associates, drug suppliers and drug customers. I also have learned that drug traffickers sometimes use fraudulent information, such as nominee names and false addresses, to subscribe to communication facilities, especially emails, cellular phones, messaging apps and frequently use communication facilities to thwart law enforcement efforts to intercept their communications.

8. Based upon my training and experience as a Task Force Officer, and consultations with law enforcement officers experienced in narcotics smuggling investigations, I am also aware that:

a. Drug traffickers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

b. Drug traffickers will use cellular telephones and GPS devices because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

c. Drug traffickers and their accomplices will use cellular telephones and GPS devices because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

d. Drug traffickers will use cellular telephones and GPS devices to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

  e. Drug traffickers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings;

  f. The use of cellular telephones by drug traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data; and

  g. The use of GPS devices by smugglers tends to generate evidence that is stored on the GPS, including, but not limited to address book entries, search history, user profiles and passwords, location history, routes, contacts, saved addresses–tending to indicate who used or controlled the GPS device, and other digital information.

9. Based upon my training and experience as a Task Force Officer, and consultations with law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. I also have learned that GPS devices can and often do contain electronic records and data such as contacts location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, based upon my training, education, and experience investigating these conspiracies, I have learned that searches of cellular/mobile telephones and GPS devices yields evidence:

  a. tending to identify attempts to transport methamphetamine or some other federally controlled substance from Mexico into the United States;

  b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone

4

    numbers–used to facilitate the transportation of methamphetamine or some other federally controlled substance from Mexico into the United States;

  c. tending to identify co-conspirators, criminal associates, or others involved in the transportation of methamphetamine or some other federally controlled substance from Mexico into the United States;

  d. tending to identify travel to or presence at locations involved in the transportation of methamphetamine or some other federally controlled substance from Mexico into the United States, such as pickup, transfer, and delivery locations, along with the refueling points throughout the smuggling venture;

  e. tending to identify the user of, or persons with control over or access to, the target device; and/or

  f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

10. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Some of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

11. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of drug trafficking investigations, and the opinions stated here are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. This statement is made in support of an application for a warrant to search **Target Device** that are believed to contain evidence of violations of Title 21 U.S.C. §§ 952 and 960.

## FACTS SUPPORTING PROBABLE CAUSE

12. According to a report prepared by Customs and Border Protection Officer (CBPO) Jessica Macias, on November 15, 2018, at approximately 12:04 a.m., Laura CASAS, a United States Citizen, presented a valid California Driver's License and applied for entry into the United States at the Otay Mesa, California Port of Entry (POE). CASAS was the registered owner and driver of a 2008 Chrysler Sebring, bearing California license plate 8GBF660 (Vehicle). Also traveling with CASAS were her three minor children. CASAS told the primary inspection CBPO that she had owned the Vehicle for approximately two weeks, and that she was going to Oceanside, CA.

13. According to a report prepared by Canine Enforcement Officer (CEO) Dennis Murray, he was performing vehicle primary roving operations with his Human Narcotic Detection Dog (HNDD) when his HNDD alerted to the Vehicle. The CBPO referred the Vehicle to secondary for further inspection.

14. According to a report prepared by CBPO Sean Richardson, he screened the Vehicle through the Z-Portal x-ray machine. The Z-Portal images revealed anomalies in the dashboard area of the Vehicle and CASAS was escorted to the security office.

15. According to a report prepared by CBPO Jeannette Maysonet, she was informed of the anomalies observed in the x-ray and began searching the Vehicle in the secondary lot. The search revealed fifty (50) plastic wrapped packages containing a crystalline substance. The packages were located inside of the firewall, dashboard, and the compartment under the steering wheel. The total weight of the packages was 29.5 kilograms (65.03 pounds), and the crystalline substance field tested positive for the presence of methamphetamine.

16. Following the discovery of the methamphetamine, CASAS was placed under arrest. I was notified and responded to the POE.

17. Upon arriving at the POE, Task Force Officers and HSI Agents identified a DHS evidence bag as property removed from the Vehicle and CASAS, which contained personal property and a cellular telephone ("Cellphone"), which had been seized from CASAS at the time of her arrest.

18. On November 15, 2018, the Honorable Clinton E. Averitte, United States Magistrate Judge, signed a criminal complaint charging CASAS with importation of a controlled substance, in violation of Title 21, United States Code, Sections 952 and 960.

19. On April 16, 2019, the Honorable Nita L. Stormes, United States Magistrate Judge, signed a search warrant for the Cellphone.[1]

20. On April 30, 2019, I accompanied Master Technician Mike Magers of Smitty's Service to view the Vehicle at 9020 Airway Road, San Diego. Magers was hired by the United States to serve as a vehicle expert in the criminal case against CASAS. While inspecting the Vehicle, Magers discovered a piece of a cell phone circuit board under the driver's side rear seat cushion. He also discovered the **Target Device** in the center console. The **Target Device** was partially exposed and located under the center consoles' coffee cup holder rubber mat cover.

21. I have learned that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device,** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of CASAS, such as telephone numbers, made and

---

[1] Pursuant to that search warrant agents examined some of the Cellphone's contents. In an abundance of caution, I ask that the Court not consider information agents may or may not have seen during that examination in determining whether there is probable cause for the requested warrant.

received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information may be stored in the memory of the **Target Device**.

22. Based on my training and experience along with other law enforcement officers' training and experience, I have that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement. In my professional experience and in the professional experience of other agents with whom I have spoken, this requires planning and coordination in the weeks and often months prior to the event. For example, drug trafficking organizations (DTOs) recruit, evaluate, and supply load drivers with vehicles and phones, and drug smugglers are often asked to cross a vehicle several times to establish a pattern. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. This communication, both prior to, during and after the event is often accomplished/attempted via cellular telephone communication(s). Therefore, I respectfully request permission to search the **Target Device** for items listed in Attachment B beginning on August 15, 2018, up to and including November 15, 2018.

## METHODOLOGY

23. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started

in "airplane mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24.     Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

26.     Other than as described above, the United States has not attempted to obtain this information by other means.

//
//
//
//
//

9

## CONCLUSION

27. Based on all of the facts and circumstances described above, there is probable cause to conclude that CASAS used the **Target Device** to facilitate violations of 21 U.S.C. §§ 952 and 960.

28. Because the **Target Device** was promptly seized during the investigation of CASAS' smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by CASAS continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from August 15, 2018 to November 15, 2018.

29. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and seize items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Adriana Rosas-Carranza
Task Force Officer, HSI

Subscribed and sworn to before me this __12__ day of July, 2019.

_____
HON. WILLIAM V. GALLO
United States Magistrate Judge

10